**THE NEESE LAW FIRM**
Martha L. Neese, Esq.
14245 South 5th Street
Phoenix, AZ 85048
AZ. Bar # 010536
Telephone: 612-414-3102
marthaneese@aol.com

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | | |
|---|---|---|
| James Shelago and Miriam Shelago, | ) | **Case File No.: 07-0279 PHX-JAT** |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **PLAINTIFFS' REQUEST** |
| Marshall & Ziolkowski Enterprise LLC and | ) | **FOR ATTORNEY FEES AND** |
| Joseph Strauss, | ) | **COSTS** |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

This memorandum is submitted in support of Plaintiffs' Local Rule 54.2 Motion for Attorneys' Fees and Costs pursuant to the Court Order Granting Plaintiffs' Motion for Default Judgment on February 9, 3009. Plaintiffs now seek a determination from the Court in an amount necessary to compensate Plaintiffs for reasonable attorneys' fees and costs.

## FACTS PERTINENT TO THE MOTION

On December 1, 2006, Plaintiffs Shelago contacted Thomas J. Lyons, Esq. to consult on a matter that concerned abusive debt collection practices by Marshall &

Ziolkowski Enterprises, LLC in November of 2006.  Mr. Lyons listened to the facts and gave Plaintiffs Shelago some brief information about the FDCPA [15 U.S.C. §1692a et. seq.] and arranged to meet with Plaintiffs Shelago. [See Neese Decl. ¶4, Exh. 2(a-c)]

On December 1, 2006, Plaintiffs Shelago signed a retainer agreement consistent with their first conversation to hire Martha Neese for Neese Law Firm, Thomas J. Lyons, Sr. for Lyons Law Firm, and Thomas J. Lyons, Jr. for the Consumer Justice Center for the purpose of litigating the FDCPA claim against Marshall & Ziolkowski Enterprise LLC [Id.] [See also the Retainer Agreement at Neese Decl. ¶33, Exh. 3]

Between December 22, 2006 and February 6, 2007, an investigation of the Defendant Marshall & Ziolkowski Enterprise LLC was performed and a review of the case law interpreting the various sections (including 9th Cir and AZ Federal Case Law) of the FDCPA was conducted by the Mr. Lyons, Sr., Mr. Lyons, Jr., Martha Neese and Susan Wolsfeld a rough draft complaint was prepared. [See Neese Decl. ¶4, Exh. 2(a-c)]

From December 22, 2006 to February 7, 2007, Ms. Wolsfeld, a paralegal, in the Consumer Justice Center, investigated and incorporated her findings in to the rough outlines of a factual memo to serve as the basis for a complaint and then it was reviewed by Mr. Lyons, Sr. [Id.]

On February 7, 2007, Plaintiffs filed the Complaint in the District Court of Arizona alleging various violations of the Fair Debt Collection Practices Act (FDCPA). [Id.] (Doc. No. 1.)

On February 7, 2007 the Summons was issued by the District Court of Arizona (Docket No. 4) and Plaintiffs served Defendant Marshall & Ziolkowski Enterprise LLC and Joseph Strauss (hereinafter "MAZE") with the Summons and Complaint at 8201 Main Street, Williamsville, NY 14221 on February 22, 2007. [Id.]

Defendant failed to file and serve and file an Answer to Summons and Complaint with the requisite time of 20 days from the date of service. Fed. R. Civ. P. 12, 15(a). Defendant's Answers were due on or about March 14, 2007. [Id.]

On or about February 27, 2007 Defendant, however, retained Saeli & Tollner, P.C in Amherst, NY and Joseph F. Saeli, Jr. as counsel to explore settlement before Answering the Complaint.  Mr. Lyons received a copy of a letter from Mr. Saeli dated February 27, 2007 requesting an extension to Answer Plaintiffs' Complaint "to explore the possibility of an early resolution of this case".  Mr. Lyons and Martha Neese discussed Defense Attorney's extension request. [Id.]

During the months of March, April and May, 2007 Defendant's counsel worked on a settlement with Plaintiffs' counsel concluding with terms of settlement agreed to by counsel for the parties on May 7, 2007. [Id.]

On or about May 7, 2007 Joseph F. Saeli, Jr. drafted and submitted a settlement agreement to Plaintiffs' counsel.  Plaintiffs' counsel discussed the offer. [Id.]

Plaintiffs' counsel received a letter dated May 23, 2007 from Defense counsel Saeli informing Plaintiffs' counsel that his firm no longer represented the Defendant. [Id.]

Since May 23, 2007 neither Defendant MAZE nor a newly-named representative has communicated with Plaintiffs' counsel, nor has Defendant agreed to the terms of the

settlement agreement despite several attempts by Plaintiffs' counsel to resolve this issue amicably.

Thus far, Defendant have not answered the Complaint or engaged licensed Arizona counsel. Therefore, Defendant MAZE is in default.

On June 29, 2007 a Minute Order was entered by the Court scheduling a hearing to show cause why this case should not be dismissed for failing to serve the defendant within the time requirements of Federal Rules of Civil Procedure. (Docket No. 6)

From June 29, 2007 through July 23, 2007 Plaintiffs' counsel discussed, reviewed file and prepared for the scheduled hearing. [Id.]

On July 23, 2007 Plaintiffs' counsel Martha Neese attended the hearing scheduled by the Court.   It was determined by the Court that Plaintiffs did show cause why the complaint should not be dismissed.  [Id.] (Docket No. 8)

From July 23, 2007 through August 8, 2007 Mr. Lyons, Sr., Mr. Lyons, Jr., Martha Neese, Andrew Uttke and Susan Wolsfeld prepared, reviewed case law, drafted and filed the Motion to Enforce Settlement along with corresponding documents. [Id.] (Docket Nos. 9 – 14)

On September 10, 2007 it was ordered by the Court setting oral argument for October 22, 2007 at 10:45AM. (Docket No. 17)

From September 10, 2007 through October 22, 2007 Mr. Lyons, Sr., Mr. Lyons, Jr., Martha Neese and Susan Wolsfeld prepared for the Motion hearing.  Martha Neese attended on behalf of Plaintiffs. [See Neese Decl. ¶4, Exh. 2(a-c)]

On October 22, 2007 the Court issued an Order denying said motion for the reason stated on the record. (Docket No. 20)

From October 22, 2007 through November 20, 2007Mr. Lyons, Sr., Mr. Lyons, Jr., Martha Neese and Susan Wolsfeld prepared the Motion for default against Defendant along with corresponding documents and filed the motion. (Docket Nos. 21 - 27) [See Neese Decl. ¶4, Exh. 2(a-c)]

On January 25, 2008 Plaintiffs' Motion for Default was denied and Plaintiffs were ordered to seek and obtain entry of default. (Docket No. 28)

On May 21, 2008 Court ordered that Plaintiffs appear before Court on June 16, 2008 at 10:15am. (Docket No. 29) [See Neese Decl. ¶4, Exh. 2(a-c)]

From January 25, 2008 through May 28, 2008 Mr. Lyons, Sr., Mr. Lyons, Jr., Martha Neese, and Susan Wolsfeld reviewed case law, prepared, drafted and filed Plaintiffs' Application for Entry of Default. [Id.] (Docket Nos. 31)

On June 2, 2008 Clerk Entry of Default was entered and Plaintiffs' filed Notice of Motion for Default Judgment. [Id.] (Docket No. 31 - 38)

On January 15, 2009 the Court scheduled an oral argument for February 3, 2009 at 10:00 am for Plaintiffs' Motion for Default Judgment against Defendant Docket No 34 previously filed. (Docket No. 40)

From January 15, 2009 through February 3, 2009 Mr. Lyons, Sr., Mr. Lyons, Jr., and Martha Neese reviewed case, spoke with client, and prepared for oral argument and Plaintiffs' testimony at the hearing. [See Neese Decl. ¶4, Exh. 2(a-c)]

1   At the February 3, 2009 Judge Teilborg heard Plaintiffs' motion for Default
2   Judgment and Plaintiffs' were awarded $15,000.00 for actual and statutory damages.
3   (Docket No. 42)

4   On February 9, 2009 Judge Teilborg Ordered the Clerk to entered judgment against
5   Defendant Marshall & Ziolkowski and in favor of Plaintiffs.  Further, Plaintiffs may file a
6   request for Attorney's fees and non-taxable expenses pursuant to LRCiv54.2. (Docket No.
7   43)

## **ARGUMENT**

**I.**     **Plaintiffs' are entitled to an award of attorneys' fees under the Fair**
          **Debt Collection Practices Act.**

Attorneys' fees and costs in this case are mandated by the FDCPA, which
contains a fee shifting provision.  The fee shifting provision states in relevant part:

> Except as otherwise provided by this section, any debt collector who fails
> to comply with any provision of this subchapter with respect to any person
> is liable to such person in an amount equal to the sum of-
>
>> 3) in the case of any successful action to enforce the foregoing
>> liability, the costs of the action, together with a reasonable attorney's
>> fee as determined by the court.

15 U.S.C. § 1692k(a).

Thus, attorney's fees and costs are mandatory under the FDCPA[1] as opposed to special or discretionary as they attract competent counsel,[2] and play an integral part in "fulfilling Congress' intent that the Act should be enforced by debtors acting as private attorneys general." *Armstrong v. Rose Law Firm, P.A.*, Civil No. 00-2287, 2002 WL 31050583 at *1 (D.Minn.2002), *citing Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir.1991).

## II.   Plaintiffs' as the prevailing party is entitled to full attorneys' fees since his attorneys' time was reasonably expended and their hourly rates are reasonable.

The lodestar method, wherein the "number of hours reasonably expended on the litigation multiplied by a reasonably hourly rate," is used to determine what amount a prevailing party should be awarded for attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Armstrong v. Rose Law Firm, P.A., supra*, (applying the Lodestar method in an FDCPA action).  This requires the Court to consider 1) the plaintiffs' overall success; 2) the necessity and usefulness of the plaintiffs' activity in the particular matter for which fees are requested; and, 3) the efficiency with which the plaintiffs' attorneys conducted that activity. *Jenkins v. Missouri*, 127 F.3d 709, 718 (8th Cir.1997).

---

[1] *See Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir.1991) (affirming that "the Act mandates an award of attorney's fees").

[2] *See Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1167 (7th Cir.1997)

Factors that may be considered in calculating the lodestar include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430, fn.3.

"The most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436; *Zagorski*, 128 F.3d at 116; *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir.1995.) A plaintiff may be considered a "prevailing party" for attorney fees purposes if the plaintiff "succeed[s] on any significant issue in litigation which achieves some of the benefit sought in bringing suit." *Hensley*, 461 U.S. at 424. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435. In this case, Plaintiffs gave testimony at the hearing and was awarded more than the statutory maximum, in resolution of their FDCPA claims and are clearly the prevailing party in this action since they

obtained a complete victory, and not just limited or partial success.[3]   Plaintiffs secured a complete victory.

### a. Plaintiffs' hours were reasonably expended.

First, the Court must determine whether the number of hours spent by Plaintiffs' counsel was reasonable given the results obtained and the difficulty of obtaining those results.   Ultimately, the determination of allowable hours rests with the sound discretion of the Court, and it must "provide a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437.

### b. Plaintiffs' hourly rates are reasonable.

The Court's next inquiry is whether Plaintiffs' Attorneys' hourly rates are reasonable.   To make such a determination, the Court should consider the prevailing market rate for similar services in the community where the litigation takes place when performed by "lawyers of reasonably comparable skill, experience, and reputation." *McDonald v. Armontrout*, 860 F.2d 1456, 1458-59 (8th Cir.1998).   Here, Plaintiffs were represented by highly experienced and

---

[3] It is important to consider that "unlike most private tort litigants, [a plaintiff who brings an FDCPA action] seeks to vindicate important ... rights that cannot be valued solely in monetary terms." *Tolentino*, 477 U.S. at 651-52 (redactions in original), *quoting, City of Riverside v. Rivera*, 477 U.S. 561 (1986); *see also, e.g. Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir.2000) (finding that "damages awards do not reflect fully the public benefit advanced...").

reputable attorneys throughout this litigation, and requests the Court to approve the hourly rates of each attorney.

### c. Minneapolis-St. Paul Attorneys

#### 1) Prior experience and past fee awards

Thomas J. Lyons, Jr. is the president of the Consumer Justice Center, P.A., and participated in all aspects of this litigation from the retainer agreement up today. Mr. Lyons, Jr. has practiced extensively in the area of consumer rights, and has represented Plaintiffs in over 1,500 FDCPA cases since 1996. [See Neese Decl ¶24, Exh. 2(b-16)]

Accordingly, his hourly rate has increased over the past few years. In 2000, the Minnesota District Court approved Mr. Lyons, Jr. at a rate of $200 per hour. [See Neese Decl. ¶9, Exh. 2(b-1)] In 2002, the Minnesota District Court increased Lyons, Jr's rate to $250. [See Neese Decl. ¶9, Exh. 2(b-2) & 2(b-3)] In 2005, the Pennsylvania District Court approved Mr. Lyons, Jr. at his hourly rate of $300. (See Neese Decl. ¶9, Exh. 2(b-4)] In 2006, the California District Court also approved Mr. Lyons, Jr.'s hourly rate of $300. [See Neese Decl. ¶9, Exh. 2(b-5)] In 2006, the Minnesota District Court approved Mr. Lyons, Jr. at a rate of $350 per hour. [See Neese Decl. ¶9, Exh. 2(b-6)] Similarly, the South Dakota Court also approved Mr. Lyons, Jr. at a rate of $350 per hour in 2007. [See Neese Decl. ¶9, Exh. 2(b-7)] Mr. Lyons, Jr.'s current hourly rate is $400.

Thomas J. Lyons, Sr. is the president of Lyons Law Firm, P.A., and has practiced law for over 40 years. [See Neese Decl. ¶32, Exh. 2(c-7)] Mr. Lyons, Sr.

has participated in numerous consumer protection cases [Id.], and actively participated in all aspects of this litigation from the consultation in October 2007 up through today.

Mr. Lyons, Sr.'s rates have increased over the years in accordance with his knowledge and experience.  In 2005, the Pennsylvania District Court approved Mr. Lyons, Sr. at an hourly rate of $350.  [See Neese Decl. ¶25, Exh. 2(c-1)]  In 2006, the California District Court approved Mr. Lyons, Sr. at $350 as well. [See Neese Decl. ¶25, Exh. 2(c-2)]  Similarly, the South Dakota District Court approved Mr. Lyons, Sr. at $350.  [See Neese Decl. ¶25, Exh. 2(c-3)]  Mr. Lyons Sr.'s current hourly rate is $400.

### 2) The Laffey Matrix

Plaintiffs' Attorneys' hourly rates are reasonable based upon prevailing market rates.  Under the Laffey Matrix,[4] a "well-established objective source for rates that vary by experience," Plaintiffs' Attorneys' hourly rates are reasonable and within the appropriate range based upon the significant number of years they have practiced.  *In re HPL Techs., Inc. Securities Litigation*, 366 F.Supp.2d 912, 921 (N.D.Cal.2005).   While the Laffey Matrix is an index based upon the prevailing rates in Washington D.C., it has been cited and utilized in determining reasonable hourly rates by Ninth and Seventh Circuit courts by comparing locality pay differentials in Washington D.C. federal courts with those in the relevant city.

---

[4] See Neese Decl. ¶21, Exh. 2(b-13)

*See Selph v. Bruno-Cusamano-Montesi-Tataglia-Palmina-Capone & Associates, LLC.*, 2007 WL 433103 *12-13 (N.D.Ill.2007) (utilizing the Laffey Matrix and adjusting rates upward in Chicago based on locality pay differentials); *In re HPL Techs*, *supra* (utilizing the Laffey Matrix and adjusting rates upward in the San Francisco Bay Area based on locality pay differentials).

The locality pay differential in Minneapolis-St. Paul (19.43%) is similar to that in Washington D.C. (20.89%). [See Neese Decl. ¶22, Exh. 2(b-14)]  However, the pay differential here is lower than that in Washington D.C., and, according to the formula utilized by the courts in the Seventh and Ninth Circuit, would require a downward adjustment of 1.2%[5] to find the appropriate comparable rate for Minneapolis-St. Paul.  Consequently, the appropriate hourly rates for Thomas J. Lyons, Sr., and Thomas J. Lyons, Jr., would be somewhere between $529 and $637.  Based on these calculations, then, counsels' hourly rates of $400 seem more than reasonable.

### 3) Prevailing Market Rates

Plaintiffs' hourly rates are reasonable and consistent with those charged by other consumer law attorneys in the Mid West Region and Minnesota. According to the survey conducted by Ronald L. Burge in 2007, an attorney with 11-15 years of experience in the mid west, like Plaintiffs', on average charges an hourly rate of $394. [See Neese Decl. ¶31, Exh. 2(c-6)]

---

[5] (120.89-119.43)/120.89=0.012, or about 1.2%

Plaintiffs' attorney Mr. Lyons, Sr.'s hourly rates are also consistent with the rates charged by other consumer attorneys in the local legal community. *See* Neese Decl. ¶29, Exh. 2(c-4), Affidavit of Peter Barry dated January 24, 2008 (stating he currently retains clients at an hourly rate of $425 for non-contingent work); S*ee also* Neese Decl. ¶30, Exh. 2(c-5), Affidavit of William Crowder dated January 24, 2008 (stating his current hourly fee is $475).

Plaintiffs' attorney Mr. Lyons, Jr.'s hourly rates are also reasonable based on their reputation within the local legal community. *See also* Neese Decl. ¶12, Exh. 2(b-9), Affidavit of John Goolsby, dated January 16, 2008, previously submitted to the Court in *Olson v. Messerli & Kramer*, Case No. 07-CV-00439 (stating "Mr. Lyons, Jr. is a leader among Minnesota consumer rights lawyer, and has more experience in consumer rights litigation than any other Minnesota consumer rights lawyer I know"); *see also* Neese Decl. ¶11, Exh. 2(b-8), Affidavit of Peter Barry dated January 16, 2008, previously submitted to the Court in *Olson v. Messerli & Kramer, P.A.*, Civil No. 07-CV-00439 (stating "Thomas Lyons, Jr. is an experienced and capable lawyer who can certainly ask for and expect to receive $400 per hour minimum for his professional time and efforts"); *see also* Neese Decl. ¶30, Exh. 2(c-5), Crowder Affidavit (stating Mr. Lyons, Sr. hourly rate of $400 is reasonable).

In light of counsels' experience, competence, knowledge, and the prevailing market rate for legal services, the Court should accept their normal and current hourly rates of $400 for Thomas Lyons, Jr. and Thomas Lyons, Sr., as

reasonable for purposes of calculating the lodestar. *See also Hixon v. City of Golden Valley, et al.*, Civil No. 06-1548, Kyle, J. (D.Minn.2007) (finding a rate of $400 per hour reasonable and consistent with prevailing market rates and a lawyer of that skill level in a section 1988 case) [See Neese Decl. ¶19, Exh. 2(b-11)]; *Stella v. Jeffrey Anderson, Pete Kohman, et al.*, Civil No. 06-3564, Noel, J. (D.Minn.2007) (finding hourly rate of $350 reasonable in a Truth in Lending Act case) [See Neese Decl. ¶18, Exh. 2(b-10)]; *Peterson v. Ford Motor Co.*, 2006 WL 3030885 (D.Minn.2006) (approving hourly rates of $350 and $265 in MHRA case) [See Neese Decl. ¶20, Exh. 2(b-12)]

### d. Proportionality is not a factor to be considered.

Plaintiffs' Attorneys anticipate that Defendant may erroneously argue the size of Plaintiffs' recovery ($15,000) should be considered in determining a reasonable attorney fee award.  This should not be a factor at all, however, as the amount of attorneys' fees awarded is not required to be proportionate to the amount of damages recovered. *See Loggins v. Delo*, 999 F.2d 364, 368 (8th Cir.1993) (acknowledging that "proportionality between the amount of damages and fee awards was not required").   To the contrary, a court may abuse its discretion by applying proportionality to an attorney fee award.  *See Jordan v. Transnational Motors*, Inc., 212 Mich.App. 94, 97-98, 537 N.W.2d 471 (1995).

The U.S. Supreme Court has previously considered the question of proportionality in attorney fee awards and rejected the proposition that "fee awards under section [42 U.S.C.] 1988 should necessarily be proportionate to the

amount of damages a civil rights plaintiff actually recover." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986).  The Supreme Court went on to reason that:

> A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts.  This is totally inconsistent with Congress' purpose in enacting section 1988.

*Id.*

Similarly, in the context of the Fair Credit Reporting Act (FCRA), the Fourth Circuit held:

> Since there will rarely be extensive damages in an FCRA action, requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act.

*Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 974 (4th Cir. 1987).

More importantly, in *Armstrong*, a Minnesota FDCPA case, the Court rejected Defendant's proportionality argument, and awarded the plaintiff more than $40,000 in attorneys' fees and costs. *Armstrong v. Rose Law Firm, P.A.*, *supra*.  In that case, the defendant contended that awarding the plaintiff such an amount would create a windfall since the Plaintiff's damages totaled only $1,000.  However, the Court found that the plaintiff did not choose to create the disparity, and although the defendant had a right to aggressively to defend the case, doing so add to litigation, and increased the number of hours the plaintiff's attorney had to expend. [Id.]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The opinion in *Jordan* best explains the vital role attorneys' fees play in consumer protection cases, and the irrelevance of proportionality:

> Simply put, if attorney fee awards in these cases do not provide a reasonable return, it will be economically impossible for attorneys to represent their clients.   Thus, practically speaking, the door to the courtroom will be closed to all but those with either potentially substantial damages, or those with sufficient economic resources to afford the litigation expenses involved.  Such a situation would indeed be ironic: it is but precisely those with ordinary consumer complaints and those who cannot afford their attorney fees for whom these remedial acts are intended.

*Jordan, supra,* 537 N.W.2d at 474 (1995).

Accordingly, the Court should not consider proportionality, but rather Congress' intent in creating the fee shifting provision of the FDCPA and the goals sought to be achieved in regards to consumer protection.  By aggressively ignoring its defense and like this case the defendant in *Armstrong*, Defendant, not the Plaintiffs, created any disparity between the judgment amount, and the fees and costs actually incurred by Plaintiffs.  Since Plaintiffs prevailed on their claim, and the lodestar is an accurate representation of hours expended in their case, the full amount of attorneys' fees requested should be granted.

## CONCLUSION

In the present case, Plaintiffs' Attorneys request a total award of $17,175.33[6] in attorneys' fees and $1,177.58[7] in costs, including fees for preparing and arguing the present motion. Based upon the reasons explained in detail above, and the lodestar calculation, attorneys' fees and costs should be awarded to Plaintiffs' Attorneys in the amount of $18,352.91.

Dated: _____2 \ 20_____ 2009.

_Martha L. Neese_

Martha L. Neese, Esq. (AZ#010536)
**Neese Law Firm, P.A.**
14245 South 5th Street
Phoenix, AZ 85048
Telephone: 612-414-3102
marthaneese@aol.com

Attorney for Plaintiffs

---

[6]This amounts of $5,100.00 for Neese Law Firm [See Neese Decl. ¶6, Exh. 2(a)], $5,075.33 for the Consumer Justice Center [See Neese Decl. ¶14, Exh. 2(b)] and $7,000.00 for Lyons Law Firm [See Neese Decl. ¶26, Exh. 2(c)].

[7]This amounts of $127.95 for Neese Law Firm [See Neese Decl. ¶8, Exh. 2(a)], $1,046.60 for the Consumer Justice Center [See Neese Decl. ¶16, Exh. 2(b)], and $3.02 for Lyons Law Firm [See Neese Decl. ¶28, Exh. 2(c)].